In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

 NO. 09-06-462 CR 


 ______________________


 

DUSTIN BRANT HEARD, Appellant



V.



THE STATE OF TEXAS, Appellee 






On Appeal From the County Court at Law No. 1


Montgomery County, Texas


Trial Cause No. 05-205577






MEMORANDUM OPINION


 Dustin Brant Heard was charged with driving while intoxicated. See Tex. Pen. Code
Ann. § 49.04 (Vernon 2003). Heard filed a motion to suppress any evidence recovered as
a result of the traffic stop that led to his arrest. After the trial court denied the motion, Heard
pled no contest to the charge. The trial court found Heard guilty, sentenced Heard to 180
days in jail, and assessed a $500 fine. The court suspended the sentence and placed Heard
on community supervision for fifteen months. In a single issue, Heard argues that the trial
court erred in denying his motion to suppress. We affirm the trial court's judgment.

 Generally, an appellate court reviews a trial court's ruling on a motion to suppress for
abuse of discretion. Dyar v. State, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003). The
central issue presented in this case, however, is the meaning of a statute, a question of law
we review de novo. See id.; see also Hampton v. State, 86 S.W.3d 603, 611 (Tex. Crim.
App. 2002) (applying de novo review when interpreting statute and applying scope to
undisputed facts).

 A warrantless traffic stop is a Fourth Amendment seizure analogous to a temporary
detention. See Berkemer v. McCarty, 468 U.S. 420, 437-40, 104 S.Ct. 3138, 82 L.Ed.2d 317
(1984). A detaining officer must have reasonable suspicion to believe that an individual is
violating the law. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable
suspicion exists if the officer has specific, articulable facts that, taken together with rational
inferences from those facts, lead the officer to reasonably conclude that the person detained
actually is, has been, or soon will be engaged in criminal activity. Id.

 Trooper James DeFrance, a certified peace officer, testified that he was on patrol in
a marked peace officer car at approximately 12:21 a.m. when he stopped a vehicle for a
traffic violation. The roadway had two lanes with one lane traveling in each direction. The
area was dark. After DeFrance issued a citation or warning to the driver, he got into his
vehicle. He kept the emergency lights activated as a safety measure to alert oncoming traffic
to his presence on the side of the road and to allow both vehicles to merge back into the
traffic lane. 

 The trooper looked in his rearview mirror and saw that a vehicle approaching was not
slowing down to a speed below the posted speed limit. His radar indicated that as the vehicle
approached and passed him, it was traveling at fifty-six miles per hour in a fifty-five mile per
hour zone. DeFrance stopped the vehicle because the vehicle passed his patrol car without
slowing to a speed of at least twenty miles under the posted speed limit. 

 Heard was the driver of the vehicle. He argues the traffic stop was unlawful because
the trooper did not have reasonable suspicion to conclude that Heard violated section 545.157
of the Transportation Code. See Tex. Transp. Code Ann. § 545.157 (Vernon Supp. 2007). 
Heard cites a provision of the Texas Department of Public Safety's written policy relating
to "emergency and pursuit operations" that states, "When operating a unit so equipped, an
officer will activate the siren and/or emergency lights before a pursuit or emergency run
begins and will continue such activation until the pursuit or emergency run is concluded as
required by Transportation Code Section 546.003." He relies on a note made by the Texas
Department of Public Safety's senior assistant general counsel on a fax cover sheet stating
that "a 'pursuit' includes any time an officer signals a driver to pull over, and the pursuit is
not considered concluded until the officer has completed any necessary business with the
driver (e.g., writing a citation)." Heard contends that when his vehicle passed the trooper's
patrol car, the patrol car was not an "authorized emergency vehicle" because the trooper had
concluded his pursuit of the other vehicle, and the continued use of emergency lights violated
the Texas Department of Public Safety's policies. Heard argues that because the trooper
should have turned off the emergency lights prior to Heard passing the patrol car, Heard's
initial detention and subsequent arrest were unlawful. 

 Section 545.157(a) of the Transportation Code provides as follows:

 (a) On approaching a stationary authorized emergency vehicle using visual
signals that meet the requirements of Sections 547.305 and 547.702, an
operator, unless otherwise directed by a police officer, shall:

 (1) vacate the lane closest to the emergency vehicle when driving on a
highway with two or more lanes traveling in the direction of the
emergency vehicle; or

 (2) slow to a speed not to exceed:

 (A) 20 miles per hour less than the posted speed limit when the
posted speed limit is 25 miles per hour or more; or

 (B) five miles per hour when the posted speed limit is less than
25 miles per hour.

 

Id.; see also Tex. Transp. Code Ann. § 547.305 (Vernon Supp. 2007), § 547.702 (Vernon
1999). The statute defines an "authorized emergency vehicle" as, among other things, "a fire
department or police vehicle[.]" Tex. Transp. Code Ann. § 541.201(1)(A) (Vernon Supp.
2007). 

 Heard's argument that the marked police car was not an authorized emergency vehicle
has no merit. The statute expressly provides that a police vehicle is an authorized emergency
vehicle. See id. When an authorized emergency vehicle is stationary and using visual signals
that meet statutory requirements, an operator of an approaching vehicle must comply with
section 545.157(a). See id. § 545.157(a). The statute does not provide an exception for
circumstances when the use of visual signals on a stationary authorized emergency vehicle
does not comply with departmental policies.

 In any event, here the use of visual signals was an authorized use. Under section
546.003, an operator in a parked authorized emergency vehicle shall use, at the operator's
discretion and in accordance with departmental policies, audible or visual signals that meet
statutory requirements. See id. §§ 546.001, 546.003 (Vernon 1999). The Texas Department
of Public Safety's policy provides that the operator will activate emergency lights before a
pursuit begins and will continue such activation until the pursuit is concluded as required by
section 546.003. 

 DeFrance testified that he stopped another vehicle for a traffic violation. DeFrance
exercised his discretion in continuing to use the emergency signals to make sure other drivers
could see his vehicle in the dark and to allow both his patrol car and the other vehicle to
merge back into traffic. The trooper testified that his business with the other driver had not
concluded when he returned to his car because he had to make sure the driver could safely
return to the roadway. Heard approached without slowing to twenty miles per hour less than
the posted speed limit. The trooper had reasonable suspicion to conclude that Heard violated
the law.

 Issue one is overruled. The judgment is affirmed.

 AFFIRMED. 

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on October 31, 2007

Opinion Delivered March 12, 2008

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.